Commonwealth of Pennsylvania, Department of Transportation, Appellant, *v.* Andrew Bellas and Marvel M. Bellas, Appellees.

Argued May 9, 1974, before Judges KRAMER, MENCER and ROGERS, sitting as a panel of three.

*David Ward Murphy,* Special Assistant Attorney General, with him *Richard J. Nassau,* Special Assistant Attorney General, *Robert W. Cunliffe,* Deputy Attorney General, and *Israel Packel,* Attorney General, for appellant.

*Bernard Goldstone,* with him *Routman, Moore, Goldstone & Valentino,* for appellees.

OPINION BY JUDGE MENCER, June 27, 1974:

Andrew and Marvel Bellas were the owners of a tract of land in Mercer County upon which was located a

gasoline station which was under lease to the American Oil Company (American). On September 24, 1970, the entire tract was condemned by the Department of Transportation of the Commonwealth of Pennsylvania (Commonwealth).

A board of view awarded total damages of $28,000. Both parties appealed this award to the Court of Common Pleas of Mercer County where a jury awarded a verdict of $47,000. The Commonwealth filed a motion for a new trial. The motion was denied by the lower court and judgment was entered on the verdict. The Commonwealth then brought this appeal.

We first note our limited scope of review in this type of case, stated most recently in *Cohen v. Redevelopment Authority of the City of Philadelphia,* 12 Pa. Commonwealth Ct. 125, 127, 315 A. 2d 372, 373 (1974) : "The grant or refusal to grant a new trial is within the discretion of the lower court and will not be reversed on appeal ' ". . . absent a clear abuse of discretion or an error of law which controlled the outcome of the case." ' Mishkin v. Lancaster Redevelopment Authority, 6 Pa. Commonwealth Ct. 97, 100, 293 A. 2d 135, 136 (1972). This discretion, however, is not absolute and where ' ". . . the verdict is against the clear weight of the evidence or (that) the judicial process has effected a serious injustice, he [the trial court] is under a duty to grant a new trial." ' Lewis v. Urban Redevelopment Authority of Pittsburgh, 5 Pa. Commonwealth Ct. 176, 179, 289 A. 2d 774, 776 (1972)."

The Commonwealth argues as the only issue in its appeal that we should reverse the lower court and grant a new trial because the lower court erred by refusing to permit evidence of an option to purchase the condemned property for a specific price. A discussion of the facts surrounding this option is contained in the following excerpt from the lower court's opinion: "The testimony at the time of the trial indicated that

on April 23, 1955, Robert M. Bailey et ux., who were the prior owners of the property involved, entered into a lease with the American Oil Company leasing this property for a period of ten years with the option being given to the lessee to purchase the property at any time during the term of the lease for $40,000.00. The monthly rental payable under this lease was $200.00 per month.

"The lease also contained an option to renew and extend it for a period of five years at the same rental and a further option to renew and extend for an additional five years at the same rental.

"On May 18, 1956, a modification of the lease was entered into by the same parties whereby the lease was postponed and was to go into effect on May 1, 1956. All other terms of the lease were ratified.

"On August 14, 1957 a modification of the lease was entered into between Robert M. Bailey et ux., Andrew Bellas et ux., Mellon National Bank and Trust Company, and the American Oil Company in which it was agreed that the purchase price be changed from $40,-000.00 to $30,000.00 under the option as set forth in the lease. Other than this change, all the terms of the original lease were to remain in effect.

. . . .

"On January 14, 1966 the parties entered into an agreement that the old lease of April 23, 1955 be cancelled and that it be superseded by a new lease. This lease provided that instead of two five year options to renew there would be a one year extension and nine one year options to renew. Other than this change the terms of the lease remained the same including the option to purchase at any time during the term of the lease for $30,000.00. The lease between the plaintiff and American Oil Company was in effect at the time of condemnation on September 24, 1970 and it should also be noted that the plaintiffs had purchased the

property from Robert M. Bailey et ux. and therefore were the owners.

"The plaintiffs entered into an agreement with American Oil Company as to how the award for the taking of their land would be divided and therefore this was not an issue in the case.

"At the time of trial the Commonwealth attempted to get into evidence the lease between the property owners and American Oil Company in order to show that the plaintiffs had made an offer to sell at or about the time of condemnation. This offer, the defendant contended, was for $30,000.00 and it is further contended, that the offer was made on January 14, 1966, the date of the most recent modification of the lease and therefore it was sufficiently close to the date of condemnation to be relevant.

"The plaintiffs objected on the grounds that this was not an offer to sell the property in fee simple but was at most an offer to sell a reversionary interest and therefore was not relevant and further for the reason that the lease, executed on January 14, 1966, was nothing more than a continuation of the original lease made April 23, 1955 and that the sale price reflected the value of the property on that date."

Of course it is the law in Pennsylvania that an offer by a property owner to sell, if not too remote in time, may be admitted into evidence as an admission by the property owner of what he considers the value of his property to be at the time he made the offer. *Durika v. Derry Township School District*, 415 Pa. 480, 203 A. 2d 474 (1964). We also agree with the Commonwealth that an option price should receive the same treatment as an offer to sell. *See Rossi v. Commonwealth*, 39 Pa. D. & C. 2d 308 (1966).

However, we think the option price here should receive different treatment because it was one of a number of terms contained in a lease. The lower court's

reasoning on this point is well stated and we therefore repeat it at this time: "It must be borne in mind that this property was an investment type of property which was built for rental purposes and from 1955 to 1970 there was no effort on the part of American Oil Company to exercise its option to purchase and therefore it was obvious that the primary intent of the agreement was to lease the property as a gasoline station rather than sell it. *We therefore feel that the purchase price as set forth in the original lease and subsequent modifications might not reflect a true value of the property because a portion of the consideration involved was the signing of a lease for ten years* with two options to renew for additional five year periods. *This of itself was of considerable value and might well have led lessors to adjust the purchase price contained in the option to a lower figure than they would normally have agreed to sell the property.* In other words the amount of monthly rental may have had some bearing on the option in the overall negotiations. For this reason, we believe that the general rule should not apply here because this is not the ordinary situation where the owner of a property makes an offer to sell his property in fee simple to a buyer." (Emphasis added.)

We also find that the issue of remoteness in time of the option was decided correctly by the lower court. Because we feel we cannot make the resolution of this problem any more clear, we again rely on the cogent opinion of the lower court: "We further believe that the offer contained in the lease in the form of an option to the American Oil Company was too remote to reflect the value of the property when it was condemned in 1970. It is true that the original lease was made in 1955 and subsequently modified in 1956. It is also true that on January 14, 1966 an agreement was entered into whereby a new lease executed at the same time

was deemed to supersede and cancel the original lease of April 23, 1955 but it must be borne in mind that at no time did the American Oil Company fail to have a valid lease in effect. In other words, the lessors had no choice in 1966 as far as whether or not they would lease their property to American Oil Company. The only choice they had was whether they would agree to lease it for five years with an option to renew for an additional five years or whether they would agree to cancel that lease and execute a new lease for one year with nine additional one year options for extension of the lease. In either event they were bound to American Oil Company for a period of ten years and it is not a situation, as the Commonwealth contends, that the old lease was cancelled and a new bargain was made. If the lessors had refused to sign the new lease because of the terms contained therein or because of their desire to change the purchase price under the option, the American Oil Company could have merely renewed the lease for an additional five years under the old terms. At no time in 1966 did the parties conduct an arms length negotiation since the lessors were bound under the old lease if they refused to accept the new lease. We do not feel that this Court was justified in treating the lease of 1966 as an offer to sell, voluntarily made by the property owners. It was, in our opinion, nothing more than an extension of a Lease-Agreement originally entered into in 1955 and modified in 1956. To permit the jury to consider the option to purchase for $30,000.00 as reflecting the lessors' value of the property in 1966 would be unfair."

As we stated in *Lewis v. Urban Redevelopment Authority of Pittsburgh*, 5 Pa. Commonwealth Ct. 176, 180, 289 A. 2d 774, 776 (1972), in regard to the issue of remoteness: "The admissibility of such evidence is within the discretion of the trial court and should not be disturbed unless such discretion was grossly abused.

B. & K., Inc. v. Commonwealth, 398 Pa. 518, 159 A. 2d 206 (1960)." We find no abuse of discretion in the lower court's actions in this case.

In conclusion, we endorse the lower court's treatment of the evidentiary problem it had before it. More importantly, we find that its refusal to permit the evidence requested by the Commonwealth was neither an abuse of discretion nor an error of law. Consequently, the refusal of the lower court to grant the Commonwealth a new trial must be upheld.

**Order affirmed.**