The Redevelopment Authority of the City of Philadelphia, Appellant *v.* Louise R. Pelullo, Appellee.

Argued October 5, 1979, before Judges WILKINSON, JR., DISALLE and MACPHAIL, sitting as a panel of three.

*Paul N. Sandler,* with him, *Leon Katz* and *Peter Galante,* for Appellant.

*Steven Waxman,* with him, *Bolger and Picker,* for respondent.

OPINION BY JUDGE DISALLE, December 18, 1979:

The Redevelopment Authority of the City of Philadelphia (Condemnor) appeals from a decision of the Court of Common Pleas of Philadelphia County granting a new trial to Louise R. Pelullo (Condemnee). In this condemnation proceeding, we are asked to determine whether the lower court abused its discretion in concluding that the jury's verdict was inadequate.

On August 22, 1972, property on which Condemnee conducted two businesses was condemned. Subsequent to a hearing, a Board of View (Board) awarded Condemnee $65,000.00 compensation for the taking of her real property.[1] The Condemnor appealed to the court of common pleas. During the trial, Condemnor offered to settle the real property claim for $55,000.-00. Condemnee refused. At trial, Condemnee's expert witness fixed the fair market value of the real property at $97,000.00. The Condemnor's two ex-

---

[1] An award for business dislocation was deferred pending vacation of the condemned premises.

perts fixed the fair market value at $38,000.00 and $31,500.00. Both experts relied partially on comparable sales of property made prior to the date of the condemnation at issue.[2]

At trial, Condemnee also sought an award of $10,000.00 damages for business dislocation pursuant to Section 601-A(b)(3) of the Eminent Domain Code (Code), Act of June 22, 1964, Special Sess., P.L. 84, *as amended*, added by the Act of December 29, 1971, P.L. 640, 26 P.S. §1-601A(b)(3).[3] Most of the evidence tendered in support of this claim related to whether or not Condemnee suffered a "substantial loss" of "existing patronage." *See* Section 601A (b)(3)(i) of the Code, 26 P.S. §1-601A(b)(3)(i), *supra* note 3.

Condemnee conducted two businesses on her condemned property, a construction business and a lumber and rug business. Condemnee successfully re-

---

[2] The dates of the four sales relied upon by Condemnor's experts are as follows: (1) Kimball Street—May, 1968; (2) Wallace Street—July, 1969; (3) Wharton Street—May, 1970; and (4) Upland Street—April, 1971.

[3] This Section pertinently provides as follows:

(b) Any displaced person who is displaced from his place of business or from his farm operation shall be entitled, in addition to any payment received under subsection (a) of this section, to damages for dislocation of such business or farm operation as follows:

(1) . . . .

(2) . . . .

(3) In addition to damages under clauses (1) or (2) of this subsection, damages of not more than ten thousand dollars ($10,000). . . . In the case of a business, payment shall be made under this subsection only if the business (i) cannot be relocated without a substantial loss of its existing patronage, and (ii) is not a part of a commercial enterprise having at least one other establishment not being acquired by the acquiring agency, which is engaged in the same or similar business.

located each business after purchasing two separate buildings approximately one block from the condemned property. Peter Pelullo, Condemnee's husband and co-owner of the businesses, testified that most customers were from the local area and that many were personally informed of the relocation of each business.[4] Tax returns submitted into evidence in relation to the construction business revealed that while overall business flagged somewhat during the transition phase (during which business was carried on at the condemned property), sales markedly increased in the first full year of operation at the new location when compared to sales during the last full year of operation at the old location.[5] Although subpoenaed to do so, Condemnee was unable to produce the tax returns of the lumber and rug business.

At the close of the trial, the jury returned a verdict of $41,500.00 as compensation for the taking of the real estate, but made no award for business dislocation damages. Condemnee promptly filed a motion for new trial.

Without disposing of Condemnee's challenge regarding her claim for business dislocation damage, the lower court found the real property verdict "inadequate" and ordered a new trial.[6] While expressly

---

[4] Signs advertising the relocations were placed at each of the new sites and at the old site, and telephone numbers remained the same.

[5] Although the subject property was condemned in August, 1972, the construction business was not relocated until November, 1974. Business was carried on at the old site during the transition period. Sales were approximately as follows: (1) 1973 (last full year of operation at old site)—$200,000.00; (2) 1974 (transition period) $130,000.00; and (3) 1975 (first full year of operation at new site)—$326,000.00.

[6] Condemnee did not allege in its motion for new trial that the verdicts were inadequate. See 6A Standard Pennsylvania Practice 97 et seq.

noting that the verdict was within the range of the experts' valuations, the court relied on three factors in reaching its decision: (1) the Board of View's award of $65,000.00; (2) the fact that the comparable sales relied upon by the Condemnor's experts were all made *prior* to condemnation;[7] and (3) the Condemnor's $55,000.00 settlement offer.

In the exercise of sound discretion a trial court may grant a new trial in an eminent domain case solely on the ground that the jury's verdict was inadequate, providing specific and valid reasons are given to show that the verdict is not truly reflective of the damages suffered. *Mazur v. Commonwealth,* 390 Pa. 148, 134 A.2d 669 (1957). Further, in an appeal from an order granting or refusing a new trial on the ground of inadequacy, our scope of review is limited to a determination of whether the trial court was guilty of a manifest abuse of discretion or an error of law. *Springer v. Allegheny County,* 401 Pa. 557, 165 A.2d 383 (1960).

Although the amount of a board of view's award is not admissible into evidence at the de novo proceeding before the lower court, Section 703(3) of the Code, 26 P.S. §1-703(3), the court may properly consider it to determine whether a verdict is inadequate. *Boring v. Metropolitan Edison Co.,* 435 Pa. 513, 257 A.2d 565 (1969). However, the mere disparity between a board's award and a jury verdict is not sufficient grounds for granting a new trial; rather, a board of view's award is only one factor to be considered and is secondary to a review of the entire

---

[7] The Court specifically stated as follows: "It is interesting to note that every comparable sale used by Defendant's experts occurred *before* condemnation, some as much as four (4) years before. No comparable sales after the date of condemnation were considered. Nor did the experts indicate to what extent any adjustments were made in the sales price for date of sale."

evidence presented at trial. *Tinicum Real Estate Holding Corp. v. Department of Transportation*, 480 Pa. 220, 389 A.2d 1034 (1978). We turn now to consideration of the other factors relied upon by the lower court.

The second factor considered by the lower court related to the fact that the comparable sales relied upon by Condemnor's experts were all made prior to the condemnation. *See also supra* note 7. Section 705(2)(i) of the Code, 26 P.S. §1-705(2)(i), expressly provides that a valuation expert may testify with reference to the "price and other terms of *any* sale or contract to sell the condemned property or comparable property made within a reasonable time *before or after* the date of condemnation." (Emphasis supplied.) The fact, therefore, that all of the Condemnor's comparable sales were pre-condemnation should not have been considered as a basis for granting a new trial. Further, any suggestion by the lower court that the comparable sales were suspect by reason of being too remote in time or not properly adjusted with reference to the value of property as of the date of condemnation, flies in the face of the fact that the lower court, in the exercise of its *judicial* function of determining whether the sales were comparable and otherwise probative and relevant to the question of value, admitted them into evidence. Having adjudged the sales in question admissible, the court cannot declare a verdict inadequate on the basis that they were prior sales, or were too remote in time or were not adjusted. *Commonwealth v. 108.3 Acres of Land*, 431 Pa. 341, 246 A.2d 124 (1968).

The third factor relied upon by the lower court was the Condemnor's $55,000.00 settlement offer, which, as noted, was rejected by Condemnee. It is well-established that an unaccepted offer to compromise or settle a claim cannot be introduced into

evidence. *Commonwealth v. Luciano,* 205 Pa. Superior Ct. 397, 208 A.2d 881 (1965); *see also Durant v. McKelvey,* 187 Pa. Superior Ct. 461, 144 A.2d 527 (1958). This rule is designed in part to encourage the peaceful settlement of suits without litigation. Further, such offers may not represent what a party believes his adversary should receive, but may simply reflect the price one is willing to pay to secure peace. Both purposes are served by preventing a judge from considering a settlement offer to determine the adequacy of a jury's verdict. Surely, a condemnor would be reluctant to make a settlement offer if it were likely to come back and haunt him once he had secured a favorable verdict. We do not believe, therefore, that the offer of settlement was a proper factor to be considered with reference to the motion for a new trial.

In view of our findings that the lower court improperly relied on both the nature of comparable sales utilized by the Condemnor's experts and the Condemnor's offer of settlement in granting a new trial, it is clear that the mere disparity between the Board of View's award and the jury's verdict *alone* will not support such action. *See Tinicum, supra.* Our further independent examination of the trial below has failed to yield any other basis for granting a new trial. Neither verdict of the jury was against the law, against the evidence or against the weight of the evidence.[8] We will therefore reverse the lower court's order.

---

[8] With special reference to the jury's finding that Condemnee was not entitled to business dislocation damages, we do note once again, that Section 601-A(b)(3)(i) of the Code, 26 P.S. §1-601A (b)(3)(i), requires a condemnee to show that his relocation resulted in a "substantial loss of existing patronage." *See Appeal of Brennan,* 30 Pa. Commonwealth Ct. 58, 372 A.2d 1240 (1977). Based on the evidence proffered on this point, the jury did not act improperly in denying Condemnee business dislocation damages.

## ORDER

AND Now, this 18th day of December, 1979, the order of the Court of Common Pleas of Philadelphia County dated March 21, 1978, is hereby reversed and the record is remanded to that court with directions to reinstate the verdict of the jury and to enter judgment thereon.