**Frank L. TEDESCO**

v.

**MUNICIPAL AUTHORITY OF HAZLE TOWNSHIP, Appellant.**

Commonwealth Court of Pennsylvania.

Argued March 11, 2002.

Decided May 31, 2002.

Pasco L. Schiavo, Hazleton, for appellant.

Henry A. Giuliani, Hazleton, for appellee.

Before McGINLEY, Judge, LEAVITT, Judge, and MIRARCHI, Senior Judge.

OPINION BY Judge LEAVITT.

The Municipal Authority of Hazle Township (Authority) appeals from an order of the Court of Common Pleas of Luzerne County (trial court) denying the Authority's Motion for Post–Trial Relief. By this motion, the Authority sought a reduction in the jury award of $220,000 for property taken in a condemnation proceeding or, in the alternative, a new trial. We affirm the trial court.

On May 29, 1998, the Authority condemned 0.29 acres of land belonging to Frank L. Tedesco (Landowner) in connection with its construction of a new sewer system. The condemnation consisted of a fee simple taking of 0.16 acres for construction of a sanitary sewer pumping station and a taking by easement of 0.13 acres for a sanitary sewer line. The condemned property was part of Landowner's larger tract of 23.72 acres of land, which was zoned commercial. Viewers were appointed to consider the damages to Landowner resulting from the condemnation of .29 acres of his land, and they awarded

$75,000 as compensation. Both parties appealed the decision of the viewers, and a *de novo* hearing before the trial court followed.

The trial court proceeding began with a visit to the site by the jury. Landowner's property consists of an unimproved lot in a commercial area of Hazleton targeted for growth. Prior to 1994, the area had seen only scattered development by small local businesses. This changed when Wal–Mart built a SuperCenter, reportedly one of the largest in the country. After that, the area surrounding Landowner's property began a period of rapid commercial development by businesses drawn by Wal–Mart's SuperCenter; property values escalated accordingly.

At the hearing, Landowner presented testimony on an option contract he executed on September 25, 1992 (Option Contract), which granted an option to purchase Landowner's 30 acres of property at $1,500,000 for a nonrefundable payment of $30,000. The 30 acres subject to the option included the 23.72 acres of land still owned by the Landowner at the time of condemnation in 1998.[1] The Option Contract also included an option to lease; neither option was ever exercised.

Landowner also offered the testimony of an expert witness. The expert testified that the placement of the pumping station and the path of the sewer line were such that they effected a taking of more than the 0.29 acres condemned by the Authority for the project. The expert explained that the use of the 23.72 acre parcel was impaired because any development of the property would have to accommodate the easement, making some parts of Landowner's property unusable or inaccessible. He also testified that the value of the property was further diminished because the property could not be sold as immediately available, and a purchaser would incur additional development costs in order to accommodate the easement.

To establish Landowner's damages, the expert used comparable sales for comparison. He identified various properties and discussed the reasons for his selection, which included such factors as location, grade, access, time frame and easements. It was the opinion of Landowner's expert that the loss in fair market value of Landowner's property as a result of the condemnation was $330,000.

In rebuttal, the Authority offered, *inter alia*, the testimony of the Authority's Chairman that Landowner had appeared at numerous meetings of the Board and expressed interest in having the sewer project proceed forthwith. Engineering testimony was offered by the Authority relating to the impact on Landowner's property and the cost to Landowner were he to build his own sewer line. The Authority also produced a valuation expert, who testified that although the Landowner was benefited by the project, it was a general benefit[2] for all property owners served by the new sewers and, thus, was not used to value damages. He also used comparable sales to produce his valuation. In the opinion of the Authority's expert, the damage and consequent compensation due to the Landowner was $50,000.

At the conclusion of the trial, the jury returned a verdict of $220,000 for Landowner. The Authority filed its Motion for Post Trial Relief seeking a reduction in the

---

1. Landowner sold approximately 7 acres between 1992 and 1998.

2. A general benefit may not be used to value damages, but a special benefit that improves only the property of the condemnee may be used. *Commonwealth, Department of Transportation v. Lutz*, 14 Pa.Cmwlth. 448, 322 A.2d 800 (1974).

jury verdict to $50,000 or a new trial. The Motion was denied, and the Authority appealed to this Court.

On appeal, the Authority seeks a reversal of the trial court because it believes that: 1) the trial court erred in several evidentiary rulings; 2) prejudicial remarks were made by Landowner's counsel during closing argument; and 3) the jury verdict of $220,000 for .29 acres, almost triple the amount of the viewers' award, is manifestly unjust, requiring this Court's intervention.

Our scope of review of the trial court's ruling on the Motion for Post Trial Relief is limited. In general, we will not disturb the lower court's ruling unless the court manifestly abused its discretion or committed an error of law that affected the outcome of the case. Stated differently, this Court's inquiry is to determine whether the trial court acted capriciously or palpably abused its discretion. *Brown v. Redevelopment Auth. of the City of Harrisburg*, 35 Pa.Cmwlth. 415, 386 A.2d 1052 (1978).

■ The Authority first challenges the trial court's decision to admit the Option Contract into evidence. It contends that because the option was never exercised, the Option Contract is the functional equivalent of a mere offer, as opposed to a sales agreement. It also challenges the admissibility of the Option Contract because by the time of the condemnation, the contract was six years old and related to 30 acres, not the 23.72 acres subject to the trial court proceeding.

The Authority acknowledges that option agreements may be used as evidence in condemnation proceedings, but it claims their use is rare and only for the purpose of cross-examining the condemnee. It argues that allowing Landowner to testify about the Option Contract violated the longstanding principle that a purchase price offer that a condemnee receives in the open market prior to condemnation is inadmissible. *Redevelopment Auth. of Philadelphia v. Lieberman*, 8 Pa.Cmwlth. 366, 302 A.2d 915 (1973); *Saunders v. Commonwealth*, 345 Pa. 423, 29 A.2d 62 (1942). Further, the Authority notes that in *Commonwealth, Department of Transportation v. Bellas*, 14 Pa.Cmwlth. 293, 321 A.2d 418 (1974), this Court refused to allow an option agreement to be used even for cross-examination purposes because, as here, the option was part of a lease.[3]

■ It is true that offers are generally not admissible in a condemnation proceeding, both in direct and cross-examination. *Saunders* remains good law notwithstanding changes in the Eminent Domain Code over the years, but exceptions to this general rule have developed. For example, in

**3.** This is because the rental payments were a factor in establishing the option price, and it could be misleading to allow the jury to consider the option. Thus, *Bellas* upheld the trial court's decision not to admit the option agreement.

   This holding is distinguishable. First, the Option Contract here was not part of a lease; the lease option was an alternative to the purchase option. There is no evidence that the lease alternative determined the stated purchase price. Second, it was the condemnee in *Bellas* that objected to the evidence because it was offered to prove a lower value to the property. Here, the con-

demnee offered the Option Contract into evidence. Ordinarily, a condemnee would not offer into evidence an agreement that states a purchase price of less than 50% of the value claimed by the condemnee, which is our case here. The Option Contract, covering 30 acres, stated a purchase price of $1,500,000 in 1992; the Landowner's expert assigned a market value of $3,138,000 for 23.72 acres in 1998. However, the Authority's expert assigned a 1998 market value of $900,000 for Landowner's 23.72 acre parcel, substantially below the 1992 option price.

*Durika v. School Dist. of Derry Township*, 415 Pa. 480, 203 A.2d 474 (1964), our Supreme Court refused to require a new trial where a condemnee, on cross-examination, was required to admit that three years before the condemnation he was willing to sell his property for a lower price than the value to which he testified on direct. In *Commonwealth, Department of Transportation v. Lutz*, 14 Pa.Cmwlth. 448, 322 A.2d 800 (1974), this Court permitted the condemnee to testify about an offer made six years before the condemnation, because the purpose of the testimony, which did not refer to the offer amount, was to rebut the condemnor's claim that the property only became attractive to investors because of the new highway. Of course, offers made by a condemnor and rejected by a condemnee prior to a hearing are never admissible because they measure the settlement value of a case, not the fair market value of the condemned property, and to hold otherwise would discourage settlement of litigation. *E.g., Redevelopment Auth. of Philadelphia v. Pelullo*, 48 Pa.Cmwlth. 68, 409 A.2d 122 (1979).

The case law on offers, however, is not dispositive of whether an option agreement will be admissible. Section 705(2)(i) of the Eminent Domain Code provides that the testimony of a qualified valuation may include "[t]he price and other terms of any sale *or contract to sell* the condemned property...." Act of June 22, 1964, Sp. Sess., P.L. 84, *as amended*, 26 P.S. § 1–705(2)(i) (emphasis added). In *Rossi v. Commonwealth*, 39 Pa. D. & C.2d 308 (1966), the Court of Common Pleas of Lu-

zerne County, the trial court in this case, considered whether an option agreement was admissible under the Section 705(2)(i). The condemnor had argued that unless an option concludes in a sale of the property, it lacks probative value. The court disagreed, noting that the Eminent Domain Code refers to a "contract to sell" not a "contract of sale." Even though an option is a unilateral contract, the court found that the law was clear that it was a "contract to sell" property at a fixed price within a certain time. This reasoning was found persuasive by this Court in *Bellas*. Thus, we disagree with the Authority that the Option Contract was inadmissible as a mere offer;[4] it is a "contract to sell" within the meaning of the Eminent Domain Code.

This does not end the inquiry because the Option Contract had to be "in effect a reasonable time before ... the date of condemnation ...." in order to be admissible. Section 705(2)(i) of the Eminent Domain Code, 26 P.S. § 1 705(2)(i). Cases have held that a sale eleven years old may be too remote to consider,[5] but one four years old may be considered if there have been no changes in the real estate market.[6] In applying the reasonable time standard, the court will also consider whether there has been a change in the condemned property during the passage of time. In *Brown v. Redevelopment Auth. of Harrisburg*, for example, a sale occurring three years and nine months prior to the condemnation was excluded because of the improvements made to the condemned

---

**4.** The Authority conflates "offer" and "option agreement." On occasion, courts do as well. In *Bellas*, for example, this court referred to the option agreement as an "offer." Clearly, at issue in *Bellas* was an executed option agreement, which agreement was specifically found to be a sales agreement, not an offer as that term was used in *Saunders*.

**5.** *Redevelopment Auth. of the City of Chester v. Bosacco*, 46 Pa.Cmwlth. 242, 406 A.2d 1163 (1979).

**6.** *Whittaker v. Commonwealth, Department of Transportation*, 45 Pa.Cmwlth. 260, 406 A.2d 819 (1979).

property. In *Klick v. Commonwealth, Department of Transportation,*[7] 20 Pa. Cmwlth. 627, 342 A.2d 794 (1975), this Court upheld the trial court's ruling to exclude a five-year-old sale from evidence because of the rapid inflation in real estate prices and the changing character of the neighborhood.

This is a close case. A six-year old agreement falls within the time parameters approved by this Court in *Klick,* but Landowner's property is in an area where real estate prices are escalating quickly, which, under the *Klick* reasoning, would make it inadmissible. Here, however, the trial court reasoned that the factual differences between the property in 1992 and 1998 were well developed for the jury through direct examination, competent cross-examination by the Authority's counsel and by the other evidence presented. On this basis, the trial court admitted the Option Contract. Evidentiary rulings will not be set aside unless palpably wrong; we cannot hold as a matter of law that the trial court erred and, thus, uphold the trial court's decision to admit the Option Contract.

■ The Authority next asserts that the trial court erred in allowing certain comparable sales identified by Landowner's expert to be considered by the jury. Section 705(2) of the Eminent Domain Code, 26 P.S. § 1–705(2), does not set forth specific criteria for what is "comparable." It merely restricts the evidence to comparable property sold within a reasonable time before or after the condemnation. *Breinig v. Hatfield Township,* 23 Pa.Cmwlth. 394, 352 A.2d 230 (1976). Section 705 provides in relevant part:

Whether at the hearing before the viewers, or at the trial in court on appeal:

(1) *A qualified valuation expert may,* on direct or cross-examination, *state any or all facts and data which he considered in arriving at his opinion,* whether or not he has personal knowledge thereof, and his statement of such facts and data and the *sources of his information shall be subject to impeachment and rebuttal.*

(2) A qualified valuation expert may testify on direct or cross-examination in detail as to the valuation of the property on a comparable market value, reproduction cost or capitalization basis, which testimony may include but shall not be limited to the following:

(i) *The price and other terms of any sale* or contract *to sell* the condemned property or *comparable property made within a reasonable time before or after the date of condemnation.*

26 P.S. § 1–705 (emphasis added).

■ A trial court has the duty of determining whether a comparable sale is admissible or, as it is often articulated by our courts, "judicially comparable." Whether particular valuation evidence is probative and relevant, and thereby admissible, is determined on a case-by-case basis. *Breinig,* 352 A.2d at 230. The Authority argues that the trial court erred in admitting certain property sales because they were for smaller parcels than Landowner's. The trial court considered the Authority's objections but found that these differences were explained for the jury by the experts and developed by counsel in cross-examination. We cannot disturb the trial court's decision with respect to judicially comparable sales[8] unless we find a

---

**7.** The *Klick* Court noted that as a general principle, a sale between three to seven years before the condemnation will be found to have occurred within a "reasonable" time.

**8.** The record shows that the trial court admit-

"gross" abuse of discretion. *Commonwealth v. Fox*, 16 Pa.Cmwlth. 23, 328 A.2d 872 (1974). Because we can find no abuse of discretion in the trial court's decision to admit some properties as comparable and exclude others, we decline to reverse.

The Authority really challenges how the jury exercised its judgment, not the admissibility of certain comparable sales. Because no two properties are alike, experts in valuation matters testify about the differences between properties using such factors as size, topography, access, time and other conditions in determining fair market value. *In re: Condemnation of Legislative Route 52, Commonwealth, Department of Transportation*, 93 Pa. Cmwlth. 403, 501 A.2d 1172 (1985). The opinion of the expert is subject to impeachment and rebuttal under Section 705(1) of the Eminent Domain Code. The factors the experts considered and how they arrived at their opinions go to the weight and credibility of their testimony and are for the jury to decide. *Appeal of Redevelopment Auth. of the City of Scranton*, 156 Pa.Cmwlth. 388, 627 A.2d 292 (1993). We cannot substitute our judgment for that of the jury.

■ The Authority next argues that Landowner's counsel made statements in closing argument so outrageous and prejudicial that they warrant a new trial. In the first comment objected to by the Authority, Landowner's counsel claimed that counsel for the Authority had not timely submitted its expert report to Landowner's counsel in the pre-trial phase of the proceeding. In the second comment, Landowner's counsel misstated what the Authority's expert had stated about the condemned property. Remarks by counsel may be grounds for a mistrial, but they must be beyond correction by any admonition which the court may give the jury. 7 STANDARD PENNSYLVANIA PRACTICE 2d § 38:50. In deciding whether the remarks are beyond correction, the trial court will look at the totality of the circumstances and whether the offending statements were cut short by opposing counsel before serious damage was caused.[9] Here, the remarks were cut short by the timely objection of the Authority's counsel. The trial court found that its immediate, curative instructions to the jury were sufficient to avoid harm and that, in any case, the remarks were not so prejudicial as to warrant the extreme remedy of a new trial. We agree.

■ Finally, the Authority argues that the $220,000 verdict was excessive and against the evidence. The Authority claims that Landowner did not meet his burden of proving such damages, and, thus, the verdict shocks the conscience.

■ It is reversible error to grant a new trial where the jury's verdict falls within the range of expert testimony on value. *Fink v. Commonwealth*, 85 Pa. Cmwlth. 290, 482 A.2d 281 (1984). In a condemnation case, it is the province of the jury to weigh the credibility of the conflicting testimony and determine the fair mar-

---

ted some property sales offered into evidence by Landowner over the Authority's objections but denied others, such as Sale Property No. 1. The evidentiary rulings were not one-sided.

9. The case law provides numerous examples of counsel remarks that do not justify a mistrial. *E.g., Rutalonis v. Rospieski*, 289 Pa. 456, 137 A. 606 (1927) (remark by counsel slurring witnesses); *Arnold v. McKelvey*, 253 Pa. 324, 98 A. 559 (1916) (a remark by counsel commenting on failure of adverse party to call a material witness in the employ of that party); *Rondinelli v. City of Pittsburgh*, 407 Pa. 89, 180 A.2d 74 (1962) (remark by plaintiff's counsel that a small verdict would not be fair or reasonable).

**938**

ket value of the property at the time of the condemnation. *Redevelopment Auth. of the City of Philadelphia v. Nunez,* 109 Pa.Cmwlth. 240, 530 A.2d 1041 (1987). In this case, Landowner's expert testified the damages were $330,000, and the Authority's expert testified the damages were $50,000. The jury's award of $220,000 falls within these valuations.

Furthermore, where the jury views the premises, as in this case, its award is entitled to special weight upon appellate review. *Id.* Indeed, where a jury views the site, this Court has held that the jury may base its verdict on its own judgment and disregard the expert testimony entirely. *Appeal of Redevelopment Auth. of the City of Scranton,* 156 Pa.Cmwlth. 388, 627 A.2d 292 (1993).

The jury's verdict was within the range of each expert's valuation and was based on a view of the property. We cannot say the verdict of the jury is so contrary to the weight of the evidence as to shock one's sense of justice. *Borough of Tamaqua v. Knepper,* 54 Pa.Cmwlth. 630, 422 A.2d 1199 (1980).

Because we find that the trial court did not err in the exercise of its discretion to deny the Authority's Motion for Post Trial Relief, we affirm.

### ORDER

AND NOW, this 31st day of May, 2002, the Order of June 7, 2001 of the Court of Common Pleas of Luzerne County in the above-captioned matter is hereby affirmed.