IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard Miller and Mary Lou Miller,    :
:
Appellants    :
:
v.    : No. 1269 C.D. 2020
: Submitted: October 18, 2021
The Borough of Indian Lake    :


BEFORE:    HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK             FILED: November 16, 2021


Appellants Richard Miller and Mary Lou Miller (Millers) appeal from the judgment entered by the Court of Common Pleas of Somerset County (trial court) on a unanimous jury verdict in favor of the Borough of Indian Lake (Borough) and against the Millers. The Millers assert that the trial court erred and/or abused its discretion by admitting the testimony of the Borough's valuation expert over the Millers' objections and by refusing to charge the jury with the Millers' proposed instruction. Upon review, we affirm.

## I. Background

This case arises out of a dam remediation project undertaken by the Borough at the direction of the Pennsylvania Department of Environmental Protection (DEP). DEP required that the Borough make improvements to Indian

Lake's dam to control the probable maximum precipitation event of approximately 30 inches of rainfall over a 12-hour period or 27 inches of rainfall over a 6-hour period. In order to comply with DEP's requirements, the Borough opted to raise the breast of the dam and to expand the existing flowage easement from 2,290 feet to 2,295.5 feet. To expand the flowage easement to the 2,295.5-foot mark, the Borough needed the agreement from 500 lakefront property owners within Indian Lake Resort, including the Millers.

The Millers' lakefront property (Property), which has 100 feet of lake frontage and a house that sits at an elevation of 2,290 feet above sea level with a 1.5-inch slab just above the 2,290-foot level, was among the properties affected. The Millers would not voluntarily agree to the flowage easement expansion. As a result, the Borough was required to obtain the additional 5.5-foot flowage easement from the Millers by way of partial condemnation.

On May 21, 2013, pursuant to its powers under the Eminent Domain Code,[1] the Borough Code,[2] and Borough No. 165 (Ordinance),[3] the Borough filed a Declaration of Taking (Declaration)[4] in the trial court to expand the Property's existing flowage easement to an elevation of 2,295.5 feet. Reproduced Record (R.R.) at 306a-08a. The Millers filed a Petition for a Board of Viewers (Board), which was appointed. Following a hearing, the Board issued its report and awarded no damages. The Millers appealed the Board's award to the trial court seeking just compensation for the taking.

[1] 26 Pa. C.S. §§101-1106.

[2] 8 Pa. C.S. §§101-3501.

[3] The Ordinance was enacted on March 27, 2013.

[4] Reproduced Record (R.R.) at 295a-97a.

2

The matter proceeded to a jury trial. The Borough presented the testimony of Robert Hagerich, Jr. (Appraiser), a licensed real estate broker in Pennsylvania, as its valuation expert to testify regarding the before and after fair market value of the Millers' Property based on comparable properties. The Millers initially sought to preclude his testimony as not competent by filing a motion *in limine*, and then later moved to strike his testimony during the proceedings. R.R. at 107a, 446a. The Millers objected for various reasons, including his inexperience performing flowage easement appraisals, his methodology, choice of comparable properties, and reliance on a weather report, and the fact that Appraiser did not provide a market value or any other valuation analysis *after* the taking. The trial court partially granted the motion *in limine* by precluding Appraiser from testifying regarding one property that was used in his analysis, but otherwise the trial court denied the Millers' motions and allowed Appraiser to testify. R.R. at 284a, 451a, 557a.

Appraiser testified that he employed the comparable sales approach by using recent sales of nearby comparable properties to provide the basis for his valuation opinion. Appraiser described how each property was similar to the subject Property, and how each was different, and he made adjustments in accordance with basic tenets of professional appraisal practice. Appraiser concluded that the value of the Millers' Property prior to the taking was $390,000.00. Appraiser then considered the impact of the flowage easement on the post-taking value of the Property. With the understanding that the only time that the expanded flowage easement would impact the Property would be in a weather event producing 30 inches of rainfall in a 12-hour period or 27 inches of rain over a 6-hour period,

3

Appraiser relied upon the report of weather expert Stephen M. Wistar (Wistar)[5] of AccuWeather on the likelihood of such significant rain (Wistar Report), which he attached to his appraisal. Original Record (O.R.), Board of Viewer Proceeding, 9/27/17, Borough Exhibit Nos. 8 and 9. According to the Wistar Report, the probability of a triggering maximum precipitation event occurring at Indian Lake is "infinitesimally small" -- .0004% or once every 250,000 years. *Id.*; O.R., Notes of Testimony (N.T.), 9/15/20, at 208; *see* R.R. at 503a. Appraiser also considered the fact that the Millers are "entitled to the full use and enjoyment of the site," and that there are no building restrictions within the expanded flowage easement. R.R. at 503a. Appraiser described the unique characteristics of a flowage easement and how it is not a physical taking in the usual sense of a regular sewage easement. R.R. at 503a. Because the use of the flowage easement was so unlikely, Appraiser testified that a willing and informed buyer would not consider it a factor in arriving at the price. He, therefore, concluded that the pre- and post-value of the Property were the same -- $390,000.00. R.R. at 503a-04a.

The Millers also sought to have the trial court instruct the jury regarding partial takings and the effect of a condemnation on the value of the remaining property, by informing the jury that the Millers only had a single opportunity to obtain compensation and that the Borough could make full use of the easement.[6]

---

[5] The Borough also presented the testimony of Wistar.

[6] More particularly, the Millers' proposed instruction, which was based on Section 22.60 of the Pennsylvania Suggested Standard Civil Jury Instructions, Pa. SSJI (Civ.) 22.60 (2020), provided:

> 6. Partial Taking – Effect Of Condemnation On Value Of Remaining Property

**(Footnote continued on next page…)**

4

The trial court elected to use the model jury instruction relating to partial takings rather than the Millers' adaptation of it.

Following a two-day jury trial, the jury entered a verdict in favor of the Borough upon finding that the Millers' Property did not diminish in value as a result of the Borough's taking. R.R. at 8a. As a result, the jury awarded the Millers zero damages for the partial condemnation of the Property.

Thereafter, the Millers filed a post-trial motion raising the same issues regarding Appraiser's testimony previously raised in their prior motions and requesting a new trial. R.R. at 366a. By order dated December 1, 2020, the trial court denied the Millers' post-trial motion. On December 3, 2020, the trial court then entered judgment on the jury verdict. The Millers filed a timely appeal in this

---

In this case, the Borough . . . took from the Millers a 5.5[-]foot flowage easement. That means that the Borough has a right since the taking, to flow water up to the new elevation which is now raised from 2,290 [feet] to 2,295.5 feet. The Millers are asking you to award them compensation for their loss. In considering their loss, you must not limit your consideration to the current intended use by the Borough. Rather, you are to consider that [the Borough has] a full right to the use of the easement for flowage not just under the present plan, but any future plan that [it] might develop. *The Millers will only be permitted this one occasion to come to court and appear before a jury to be compensated for their loss, no matter how much it is used in the future, so you must assume the Borough will use the easement to the fullest extent the law permits.*

In this case, [the] Borough condemned only a part of the Millers' [P]roperty, that is a five[-]foot rise in elevation to permit occasional flooding. To determine the fair market value of the remaining property, you must consider how [the] Borough may use the condemned property and how that use will affect the remaining property.

R.R. at 241a (emphasis added).

Court.[7] The trial court filed an opinion in support of its order in response to the Millers' concise statement of errors complained of on appeal.

## II. Issues

First, the Millers contend that the trial court erred or abused its discretion by admitting Appraiser's testimony over their competency objections. Appraiser did not take into consideration the value of "comparable" properties *after* the taking, only before. Appraiser did not know whether the properties considered were even affected by the taking. Second, the Millers argue that the trial court erred or abused its discretion by failing to use the Millers' requested jury instruction that the jury should assume that the Borough would use the easement "to the fullest extent the law permits" and that this was the Millers' only occasion to seek compensation for their loss. The trial court compounded this error by prohibiting argument or cross-examination relevant to the proposed instruction.

## III. Discussion
### A. Appraiser's Testimony

The Millers contend that the trial court erred and/or abused its discretion by admitting Appraiser's testimony and denying the Millers' motion *in limine*, motion to strike, and post-trial motion to preclude or strike the same. The Millers contend that Appraiser employed a novel approach to valuation by only using before values and not considering comparable sales after the taking to make a post-taking valuation. When there is a partial taking of property, valuation *before*

---

[7] Our review in an eminent domain proceeding is limited to determining whether the findings of fact are supported by competent evidence and whether the trial court committed an error of law. *Lehigh-Northampton Airport Authority v. Fuller*, 862 A.2d 159, 164 n.1 (Pa. Cmwlth. 2004).

6

*and after* the taking is necessary. It defies logic to develop the value before the taking with comparable properties, but not to calculate the value based upon comparable properties similarly affected after the taking. An expert witness is required to present facts and data and a recognized methodology in coming to a conclusion, and Appraiser did none of this. In fact, he did not even know whether any of the purported comparable properties were affected by the flowage easement. His valuation testimony was otherwise deficient because the only basis for his conclusion was some vague statement about conversations with agents. Appraiser also improperly relied upon the report of a weather expert as opposed to a hydrologist regarding the likelihood of flooding. Considering that the jury reached a verdict of no damages, it is obvious that Appraiser's testimony was relied upon for the outcome and was detrimental to the Millers' case. Because his testimony was not competent and should have been excluded, a new trial is the only remedy to cure this error.

Under Pennsylvania law, "[i]t is well established that in order for a party to be awarded a new trial, the moving party must demonstrate that it was prejudiced by the alleged error of the trial court." *Boyle v. Independent Lift Truck, Inc.*, 6 A.3d 492, 496 (Pa. 2010). "To constitute reversible error, a ruling on evidence or an instruction to a jury must be shown not only to have been erroneous, but [also] harmful to the party complaining." *Anderson v. Hughes*, 208 A.2d 789, 791 (Pa. 1965). "A new trial should be awarded on the ground that the verdict is against the weight of the evidence only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail." *Burrell v. Philadelphia Electric Co.*, 265 A.2d 516, 518 (Pa. 1970). However, "[a] new trial is not warranted

7

merely because some irregularity occurred during the trial or another trial judge would have ruled differently; the moving party must demonstrate prejudice resulting from the mistake." *Stong v. Commonwealth*, 817 A.2d 576, 581 (Pa. Cmwlth. 2003).

Rulings on the admission or exclusion of evidence are within the sound discretion of the trial court and may be reversed only when there is a clear abuse of that discretion. *Harsh v. Petroll*, 840 A.2d 404, 429 (Pa. Cmwlth. 2003), *aff'd*, 887 A.2d 209 (Pa. 2005); *Milan v. Department of Transportation*, 620 A.2d 721, 726 (Pa. Cmwlth. 1993). "An abuse of discretion is not merely an error of judgment, but if in reaching a conclusion the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias or ill-will, as shown by the evidence or the record, discretion is abused." *Sutherland v. Monongahela Valley Hospital*, 856 A.2d 55, 59 (Pa. Super. 2004) (quoting *Paden v. Baker Concrete Construction, Inc.*, 658 A.2d 341, 343 (Pa. 1995)). "To constitute reversible error, an evidentiary ruling must not only be erroneous, but also harmful or prejudicial to the complaining party." *Lock v. City of Philadelphia*, 895 A.2d 660, 665 (Pa. Cmwlth. 2006) (citation omitted).

The Eminent Domain Code requires the payment of "just compensation" for the taking of real property. Just compensation consists of "the difference between the fair market value of the condemnee's entire property interest immediately before the condemnation and as unaffected by the condemnation and the fair market value of the property interest remaining immediately after the condemnation and as affected by the condemnation." 26 Pa. C.S. §702(a). Just compensation measures "the entire property interest" before and after the condemnation "as affected by the condemnation." *Id.* The Eminent Domain Code defines "condemn" as follows: "[t]o take, injure or destroy property by authority of

8

law for a public purpose." 26 Pa. C.S. §103. It further explains that the "fair market value" of property is

> the price which would be agreed to by a willing and informed seller and buyer, taking into consideration but not limited to the following factors:
>
> (1) The present use of the property and its value for that use.
>
> (2) The highest and best reasonably available use of the property and its value for that use.
>
> (3) The machinery, equipment and fixtures forming part of the real estate taken.
>
> (4) Other factors as to which evidence may be offered as provided by Chapter 11 (relating to evidence).

26 Pa. C.S. §703.

In a partial taking of property, Section 706(a) of the Eminent Domain Code provides that the after-taking fair market value shall consider the damages to the remaining property. Section 706(a) states:

> In determining the fair market value of the remaining property after a partial taking, consideration shall be given to the use to which the property condemned is to be put and the damages or benefits specially affecting the remaining property due to its proximity to the improvement for which the property was taken.

26 Pa. C.S. §706(a). To determine "the fair market value of the remaining property," "consideration" must be given to the "damages or benefits affecting the remaining property due to its proximity to the improvement[.]" *Id.* To determine the value that a "willing and informed seller and buyer" would assign to a property, expert testimony may be used.

9

Regarding the admissibility of expert testimony in an eminent domain proceeding, Section 1105(1)-(2) of the Eminent Domain Code provides:

> (1) A qualified valuation expert may, on direct or cross-examination, state any or all facts and data which the expert considered in arriving at an opinion, whether or not the expert has personal knowledge of the facts and data, and a statement of the facts and data and the sources of information shall be subject to impeachment and rebuttal.
>
> (2) A qualified valuation expert may, on direct or cross-examination, testify in detail as to the valuation of the property on a comparable market value, reproduction cost or capitalization basis, which testimony may include, but shall not be limited to, the following:
>
> > (i) The price and other terms of any sale or contract to sell the condemned property *or comparable property made within a reasonable time before or after the date of condemnation*.

26 Pa. C.S. §1105(1)-(2)(i) (emphasis added). The Eminent Domain Code does not define the term "comparable property." *Tedesco v. Municipal Authority of Hazle Township*, 799 A.2d 931, 936 (Pa. Cmwlth. 2002). "It merely restricts the evidence to comparable property sold within a reasonable time before or after the condemnation." *Id.* It is up to the trial court to determine "whether a comparable sale is admissible or, as is often articulated by our courts, 'judicially comparable'" on a case-by-case basis. *Id.*

Here, Appraiser identified three valuation approaches -- the comparable sales approach, the income approach, and the cost approach. He selected the comparable sales approach for the Property. Under this approach, he identified four properties, all of which were lakefront properties within the Indian Lake Resort that sold between 2009 and 2012. Those sales occurred prior to but in relatively close temporal proximity to the Borough's filing of the Declaration on May 21, 2013.

10

Appraiser described how each property was similar to the subject Property, and how each was different, and he made adjustments in accordance with basic tenets of professional appraisal practice. Appraiser concluded that the value of the Millers' Property prior to the taking was $390,000.00.

As for just compensation for the flowage easement, Appraiser explained that "[a] general condemnation appraisal always involves an appraisal of the property before the condemnation act as unaffected by the condemnation and then *we consider the effects of the condemnation act; and the difference between those two is – is the damages*," and that the same rule applies in a case involving an easement. R.R. at 489a (emphasis added).

To determine the post-taking value, Appraiser considered the effect of the condemnation act. He reviewed the Declaration and the Ordinance. He testified that the only time that the new flowage easement would impact the Property would be in a weather event producing 30 inches of rainfall in a 12-hour period or 27 inches of rain over a 6-hour period. As for the likelihood of such a weather event, Appraiser relied on the Wistar Report. According to the Wistar Report, the probability of such a maximum precipitation triggering event occurring at Indian Lake is extremely rare -- .0004% or once every 250,000 years. O.R., Board of View Proceeding, 9/27/17, Borough Exhibit Nos. 8 and 9; O.R., N.T., 9/15/20, at 208; *see* R.R. at 503a-04a. Appraiser considered the fact that the Millers are "entitled to the full use and enjoyment of the site," and that there are no building restrictions within the expanded flowage easement. R.R. at 503a. Appraiser also described the unique characteristics of a flowage easement and how it is not a physical taking in the usual sense of a regular sewage easement. *Id.* Because the likelihood of a maximum precipitation event and use of the flowage easement was so unlikely, Appraiser testified that a

11

willing and informed buyer would not consider it a factor in arriving at the price. Therefore, he did not compare post-condemnation properties. Ultimately, Appraiser concluded that the post-value of the Property was $390,000.00 -- the same as the pre-condemnation value. He testified: "My opinion of value is unchanged from the before value. I see no damages." *Id.*

The Millers argue that the properties used by Appraiser in his valuation were not comparable. However, this is not a basis upon which to exclude Appraiser's testimony. As the trial court correctly explained when denying the Millers' motion *in limine*: "Any differences between those properties and the [Millers'] [P]roperty can be further developed by counsel during cross-examination." Trial Court Op., 9/4/20, at 11; R.R. at 266a. The Millers had the opportunity to point out the differences during cross-examination. The trial court determined that the four properties were comparable because they were similar in type and class and there was no indication that the sales were made under special circumstances. Trial Court Op., 9/4/20, at 11; R.R. at 266a.

The Millers also challenge the methodology used by Appraiser, arguing that it does not pass muster under the *Frye*[8] doctrine, which stands for the proposition that novel scientific evidence is admissible only if its methodology is generally accepted in the relevant scientific community. *Grady v. Frito-Lay, Inc.*, 839 A.2d 1038, 1044 (Pa. 2003). The Millers' reliance on *Frye* is misplaced because the comparable sales approach used by Appraiser was not "novel," and is regularly used in condemnation proceedings. *See Lehigh-Northampton Airport Authority v. Fuller*, 862 A.2d 159, 166 (Pa. Cmwlth. 2004). As for Appraiser's failure to consider post-condemnation values, he was not required to do so. Section 1105(2)(i) of the

_____

[8] *Frye v. United States*, 293 F. 1013 (D.C. Cir. 1923). The doctrine was adopted by the Pennsylvania Supreme Court in *Commonwealth v. Topa*, 369 A.2d 1277 (Pa. 1977).

12

Eminent Domain Code specifically authorizes the valuation of property based on comparable properties sold *"before or* after" the condemnation. 26 Pa. C.S. §1105(2)(i) (emphasis added). Indeed, the 1964 comment to Section 1105(2)(i) states that "[t]he purpose of the subclause is to emphasize that any sale of or contract or agreement to sell the condemned property or comparable property, if not too remote in time, is admissible in evidence, both on direct and cross[-]examination, as both impeaching evidence and as evidence of value." *Id.* cmt. Furthermore, Appraiser explained that the flowage easement had no effect on the value of the Property because of the unlikelihood of an extreme precipitation event triggering the use of the flowage easement and the fact that the Millers retained the full use and enjoyment of the Property. R.R. at 502a-03a. Therefore, in his opinion, it was unnecessary to compare values with post-condemnation properties. The Millers had a full and fair opportunity to present their own witnesses, including their own professional real estate appraiser, to challenge Appraiser's methodologies and conclusions.

The Millers also take issue with Appraiser's reliance upon the Wistar Report. Our courts have held that experts, by necessity, may rely on the reports of others, even reports not admitted into evidence. *Milan*, 620 A.2d at 727; *see* 26 Pa. C.S. §1105(1) (qualified valuation expert may state any or all facts and date upon which he considered in arriving at an opinion). Those reports are subject to impeachment and rebuttal. 26 Pa. C.S. §1105(1). Appraiser testified that he relied upon the Wistar Report to form an opinion as to the likelihood of a maximum precipitation event of approximately 30 inches of rainfall over a 12-hour period or 27 inches of rainfall over a 6-hour period. Based on the Wistar Report, Appraiser concluded that the chance of a precipitation event was extremely rare. R.R. at 502a-

13

03a. The Millers had the opportunity to challenge the Wistar Report and present their own evidence regarding likelihood of a weather event triggering the flowage easement. In addition, the Millers had the opportunity to cross-examine Wistar himself regarding his conclusions. *See* O.R., N.T., 9/15/20, at 211-15.

Upon review, both parties had a full and fair opportunity to present evidence regarding the Property's value based on comparable sales and to scrutinize and rebut the evidence presented by or relied upon by the other party. Appraiser's testimony was subject to cross-examination and was ultimately a matter of evidentiary weight and credibility for the jury. *See Lehigh-Northampton*, 862 A.2d at 163. We, therefore, conclude that the trial court did not err or abuse its discretion by admitting Appraiser's testimony and denying the Millers' motions to preclude or strike the same.

### B. Jury Instructions

Next, the Millers contend that the trial court erred by using the model jury instruction and rejecting the Millers' proposed adaption of it that the jury should assume that the Borough would use the flowage easement "to the fullest extent the law permits." R.R. at 241a. The trial court's instruction disregarded the plain language of the Declaration by ignoring the use of the term "initially." R.R. at 458a. The Declaration provides: "*Initially*, the expansion of said flowage easements is necessitated by renovations to the breast of Indian Lake's dam[,] which as a result of unusual weather events cause the temporary impoundment of water upon the [waterfront] properties" owned by the Millers. R.R. at 458a (emphasis added). The use of the word "initially" makes it clear that the easement is not restricted to the overflowing dam and that this is just the initial usage. The trial court ignored that term to conclude that the flowage easement could be used only for "occasional

14

flooding" as a result of extreme weather conditions. The trial court compounded this error by prohibiting argument or cross-examination relevant to the proposed instruction.

The applicable "standard of review when considering the adequacy of jury instructions in a civil case is to determine whether the trial court committed a clear abuse of discretion or error of law controlling the outcome of the case." *Phillips v. Lock*, 86 A.3d 906, 916-17 (Pa. Super. 2014) (citations and quotations omitted).

Based on Section 22.60 of the Pennsylvania Suggested Standard Civil Jury Instructions, the trial court charged the jury as follows:

> In this case, [the Borough] condemned only a part of [the Millers'] [P]roperty. To determine the fair market value of the remaining property, you must consider how [the Borough] will use the condemned property and how that use will affect the remaining property. You should consider whether the Borough's use for the condemned property will cause special damages or benefits to the remaining property.

R.R. at 542a; *accord* Pa. SSJI (Civ), §22.60 (2020). The model jury "instruction is derived from [S]ection 706 of the Eminent Domain Code[, 26 Pa. C.S. §706] . . . ." Pa. SSJI (Civ), §22.60, subcommittee note. While suggested standard jury instructions are not binding, "what is important is whether the charge as a whole provides a sufficient and correct legal basis to guide a jury in its deliberations." *City of Philadelphia v. Duda by Duda*, 595 A.2d 206, 212 (Pa. Cmwlth. 1991).

It cannot be reasonably argued that a trial court's use of a standard jury instruction constitutes reversible error. Nevertheless, the Millers contend that the use of the model instruction is intertwined with the use of the easement. The Millers argue that, because the trial court's conclusion that the Borough's use of the

15

easement was limited and remote is at odds with the plain language of the Declaration, the model instruction was insufficient.

The Borough's use is limited to the purpose of the taking as set forth in the Declaration and the Ordinance. The Declaration clearly details that the purpose of the taking is "to acquire by condemnation flowage easements *for occasional flooding* necessitated by requirements of [DEP] to increase the size of the easements for the rise and fall of water at Indian Lake to an elevation of 2,295.5 feet from a previous flowage easement elevation of 2,290 feet authorized by deed covenants." R.R. at 457a. The Declaration provides:

> 5. The purpose of this condemnation is to acquire for public purposes as more fully set forth in Ordinance aforementioned, which purposes stated therein are incorporated herein by reference as fully as though the same were herein set forth at length. Initially, the expansion of said flowage easements is necessitated by renovations to the breast of Indian Lake's dam which as a result of unusual weather events cause the temporary impoundment of water upon the [waterfront] properties owned by the Condemnees identified in Exhibit A attached hereto . . . .

R.R. at 458a. The Ordinance similarly provides that the purpose of the condemnation is to enlarge the flowage easements for occasional flooding in order to comply with DEP requirements. R.R. at 465a. Although the term "initially" is used in the Declaration, there is no other stated purpose in the Declaration or the Ordinance authorizing the condemnation or the use of the easement. We will not read into the Declaration and the Ordinance a purpose or intention that is not there. *See Rossiter v. Whitpain Township*, 170 A.2d 586, 588 (Pa. 1961).

Contrary to the Millers' assertions, the trial court accurately summarized the purpose of the Declaration stating:

16

[T]he clear and express purpose of the Declaration . . . in this case is for a deed of flowage easement for occasional flooding necessitated by requirements of [DEP] to increase the size of easements for the rise and fall of Indian Lake to an elevation of 2295.5 feet in connection with the raising of the height of the breast of the dam at Indian Lake to account for occasional flooding caused by unusual weather events.

Trial Court Order, 9/14/20 (capitalization omitted); R.R. at 340a.

Because there are no other uses than those expressly set forth in the Declaration and the Ordinance, the trial court did not err or abuse its discretion in rejecting the Millers' proposed jury instruction that the Borough would use the easement "to the fullest extent the law permits," and prohibiting argument regarding the same. As the trial court found, the Millers' proposed jury instruction "attempted to include speculative, and realistically, impossible, uses that are inconsistent with the purpose stated in the Declaration . . . and [the] Ordinance." Trial Court Op., 02/01/21, at 3-4, R.R. 584a-85a.

## IV. Conclusion

Accordingly, we affirm.

_____
MICHAEL H. WOJCIK, Judge

17

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Richard Miller and Mary Lou Miller,   :
                                         :
                   Appellants   :
                                         :
           v.              : No. 1269 C.D. 2020
                                         :
The Borough of Indian Lake      :

# **O R D E R**

AND NOW, this 16th day of November, 2021, the judgment entered by the Court of Common Pleas of Somerset County, dated December 3, 2020, is AFFIRMED.

 

 

_____
MICHAEL H. WOJCIK, Judge