IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Condemnation by Newtown Township : 
Delaware County, Municipal Authority, of : 
a Permanent Easement Across the Property : 
located at 4700 W. Chester Pike, Newtown : 
Township, Delaware County, PA : 
                   : No. 752 C.D. 2022
Folio Number: 30-00-02906-01 : Argued: November 14, 2022
Tax Map Number: 30-34-001-00 : 
                   : 
Dorothy Rafferty, Condemnee : 
                   : 
Newtown Township, Delaware County, : 
Municipal Authority, Condemnor : 
                   : 
Appeal of: Dorothy Rafferty : 


BEFORE:    HONORABLE MICHAEL H. WOJCIK, Judge
                 HONORABLE ELLEN CEISLER, Judge (P.)
                 HONORABLE STACY WALLACE, Judge

OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE WOJCIK               FILED:  December 28, 2022

         Dorothy Rafferty (Condemnee) appeals the May 18, 2022 opinion and order of the Delaware County Court of Common Pleas (trial court) making findings of fact and conclusions of law overruling each of Condemnee's preliminary objections to the Declaration of Taking filed by the Newtown Township (Township), Delaware County (County), Municipal Authority (Authority) condemning an easement over a portion of Condemnee's five-acre property pursuant to the Eminent Domain Code (Code), 26 Pa. C.S. §§101-1106.[1] We affirm.

---

[1] Section 306(a)(3) of the Code provides:
**(Footnote continued on next page…)**

**I.**

The trial court's findings of fact and the facts of record may be summarized as follows. In 2012, the Authority initiated a project known as the Upper Crum Creek Watershed Project (Project) to expand the then-existing sanitary sewer system for the Township, including many homes that had failing onsite sewage systems. The Project implements the Authority's plan under the Pennsylvania Sewage Facilities Act[2] (Act 537 Plan) including borrowing funds and obtaining access to, and the use of, property to implement the Project. Specifically, the Project involved the Authority securing access easements for the placement of underground sanitary sewers and a means by which utilities may service pump stations including a station on property adjacent to Condemnee's property that is owned by Newtown Village LLC (Newtown Village Property). The Project's completion will enable approximately 200 Township households and businesses to connect to a public sewer. The pump station on the Newtown Village Property is

---

(3) Preliminary objections shall be limited to and shall be the exclusive method of challenging:

(i) The power or right of the condemnor to appropriate the condemned property unless it has been previously adjudicated.

(ii) The sufficiency of the security.

(iii) The declaration of taking.

(iv) Any other procedure followed by the condemnor.

26 Pa. C.S. §306(a)(3).

[2] Act of January 24, 1966, P.L. (1965) 1535, *as amended*, 35 P.S. §§750.1 -750.20a.

currently inoperative because an easement to construct an access road to reach the station is required.

On August 6, 2018, the Authority approved a resolution (2018 Resolution) authorizing the Authority to file a Declaration of Taking regarding properties in connection with the Project.[3]  In November 2018, the Authority borrowed approximately $33.5 million dollars to support the Project.  The Authority also obtained all of the necessary permits for the Project, bid the Project, and executed a number of contracts to start construction.

After completing these steps, between November 2018 and June 2020, the Authority reviewed its original plans to construct the access road and considered making changes based on a request from the owner of the Newtown Village Property.  It evaluated several different alternatives for the location of the access road, including placing it over a small portion of Condemnee's five-acre property at 4700 West Chester Pike, Newtown Township, on which Rafferty Subaru is located.  After considering its options for over a year, the Authority ultimately chose an amended plan that did not change the ultimate location of the pump station on the Newtown Village Property, which still needed to be accessed for servicing in connection with the Project.  However, the amended plan required a 20-foot wide and 165-foot long permanent easement over an undeveloped corner of Condemnee's property located behind a retaining wall that she had previously constructed, and then running along the rear portion of her property behind the retaining wall.  The

---

[3] *See* Section 5607(d)(15) of the Municipal Authorities Act (Act), 52 Pa. C.S. §5607(d)(15) ("Every authority may exercise all powers necessary or convenient for the carrying out of the purposes set forth in this section, including, but without limiting the generality of the foregoing, the following rights and powers: . . . To have the power of eminent domain.").

Authority attempted to negotiate an easement with Condemnee, through her son and her attorneys acting on her behalf, but the negotiations proved unsuccessful.

Accordingly, on September 8, 2020, the Authority approved a resolution (2020 Resolution) amending the 2018 Resolution that added an additional property to the set of real properties to be taken that were necessary for the Project including the portion of Condemnee's property. As part of the 2020 Resolution, the Authority ratified and confirmed not only all of the terms and conditions of the 2018 Resolution, but also the terms and conditions of the open-ended bond without security for the Project.

On September 15, 2020, the Authority filed a Declaration of Taking in the trial court seeking to condemn a permanent easement over the small undeveloped portion of Condemnee's property. On October 16, 2020, the Authority provided Condemnee with a letter offering just compensation totaling $8,750 for the permanent easement on her property.

The Authority maintains readily accessible funds to pay for any expenses related to the Project, including the estimated just compensation offer to Condemnee or any award to Condemnee from a Board of View. These funds include an uncommitted $325,000 balance from the remaining $825,000 bond fund, from the $33.5 million that the Authority initially borrowed for the Project, and Authority-generated revenue from various fees. The Authority's 2019 and 2020 financial statements show cash and cash equivalents of $17 to $24 million and incoming rents and fees of approximately $5 million. The Authority anticipates receiving approximately $2 million from new tapping fees once the pump station on the Newtown Village Property planned by the Project and serviced by the access road becomes operational.

On October 16, 2020, Condemnee filed preliminary objections to the Declaration of Taking challenging the condemnation on four bases: (1) the Declaration of Taking is untimely under Section 302(e) of the Code[4]; (2) the taking is excessive and an abuse of discretion; (3) the Authority has not provided a sufficiently specific description of the property condemned as required by Section 302(b) of the Code[5]; and (4) the bond in connection with the taking is insufficient under Section 303 of the Code.[6]

---

[4] 26 Pa. C.S. §302(e). Section 302(e) states: "**Filing.--**The condemnor shall file within one year of the action authorizing the declaration of taking a declaration of taking covering all properties included in the authorization not otherwise acquired by the condemnor within this time."

[5] 26 Pa. C.S. §302(b)(5). Section 302(b)(5) of the Code states:

> **(b) Contents.--**The declaration of taking shall be in writing and executed by the condemnor and shall be captioned as a proceeding in rem and contain the following:
>
> * * *
>
> (5) A description of the property condemned, sufficient for identification, specifying the municipal corporation and the county or counties where the property taken is located, a reference to the place of recording in the office of the recorder of deeds of plans showing the property condemned or a statement that plans showing the property condemned are on the same day being lodged for record or filed in the office of the recorder of deeds in the county in accordance with section 304 (relating to recording notice of condemnation).

In addition, Section 302(b)(6) of the Code requires the Declaration of Taking to include "[a] statement of the nature of the title acquired." 26 Pa. C.S. §302(b)(6). Moreover, Section 305(c)(8) states the notice to a condemnee, provided after the filing of the Declaration of Taking, must include, *inter alia*, "a reasonable identification of the property" that was taken. 26 Pa. C.S. §305(c)(8).

[6] 26 Pa. C.S. §303. Section 303(a) and (c) of the Code states:
**(Footnote continued on next page…)**

Prior to hearing on the objections, Condemnee sought to compel the Authority to engage in discovery under the Pennsylvania Rules of Civil Procedure. On April 8, 2021, the Authority filed a Motion for Protective Order to limit the discovery to only documents relating to the preliminary objections. *See* Reproduced Record (RR) at 173a-209a. The next day, the Authority filed a Motion *in Limine* identifying the evidence that the Authority sought to introduce at the hearing and sought an order from the court precluding Condemnee from offering any additional evidence. *See id.* at 215a-222a. Condemnee filed responses in opposition to both of the Authority's motions. *See id.* at 223a-233a. On July 15, 2021, the trial court issued orders granting in part, and denying in part, the Authority's motions. *See id.* at 234a-240a.

On August 2, 2021, the Authority and Condemnee filed their witness lists with the court. On November 15, 2021, the Authority filed another Motion *in Limine* in the trial court objecting, *inter alia*, to the proposed testimony of Claude DeBotton, the principal for Newtown Village LLC. *See* RR at 263a-64a. As recounted by the Authority, Condemnee sought to introduce his testimony regarding

---

**(a) Bond.-- . . .** [E]very condemnor shall give security to effect the condemnation by filing with the declaration of taking its bond, without surety, to the Commonwealth for the use of the owner of the property interests condemned, the condition of which shall be that the condemnor shall pay the damages determined by law.

\* \* \*

**(c) Insufficient security.--**The court, upon preliminary objections of the condemnee under and within the time set forth in section 306(a) (relating to preliminary objections), may require the condemnor to give bond and security as the court deems proper if it appears to the court that the bond or power of taxation of the condemnor is insufficient security.

6

the plan for the access road in the prior condemnation plan and why the Authority proposed moving the road onto Condemnee's property. *See id.* at 263a.

On November 30, 2021, without a response from Condemnee,[7] the trial court granted in part, and denied in part, the Authority's motion. *See id.* at 302a-10a. Specifically, the trial court struck DeBotton from Condemnee's witness list and excluded his testimony from the hearing. *Id.* at 309a.[8] On December 3, 2021, the trial court denied Condemnee's motion for reconsideration. *Id.* at 921a-24a.

---

[7] In this regard, the trial court observed:

> The [c]ourt recognizes that on November 22, 2021, the [Authority] requested an opportunity to be heard on a telephone conference. The [c]ourt exercised its discretion that it did not need a conference to hear from the moving party. Indeed, at no time between November 15th, when the Motion *in Limine* was filed, and the filing of the Condemnee's instant Motion [for Reconsideration], did the Condemnee request a conference or, as noted above, decide that she ought to file a response to the Motion *in Limine* promptly in light of the upcoming hearing.

RR at 922a n.1 (emphasis in original).

[8] With respect to DeBotton's testimony, the trial court explained:

> [T]he [c]ourt finds that such testimony does not appear to relate to whether the taking at issue (with respect to [Condemnee's] property) is excessive and an abuse of discretion, or whether the bond in connection with the contemplated taking is insufficient. By [Condemnee's] own description of [De]Botton's proposed testimony, this witness owns land adjacent to Condemnee's property who has approved construction of an access road on his property previously. In contrast, Condemnee, by her objections to the taking at issue, does not approve construction of the access road on her property. [De]Botton's proposed testimony simply does not appear to help the [c]ourt resolve the Condemnee's objections in this case, which pertain to the taking of her property. There is also no suggestion in [Condemnee's] description of who [De]Botton is

**(Footnote continued on next page…)**

On December 6, 2021, the trial court conducted a hearing on Condemnee's preliminary objections. *See* RR at 320a-621a. Both Condemnee and Condemnor presented testimony and exhibits in support of their respective positions. *See id.* On May 18, 2022, the trial court issued the instant opinion and order making findings of fact and conclusions of law overruling each of Condemnee's preliminary objections to the Declaration of Taking filed by the Authority. Condemnee then filed the instant appeal of the trial court's opinion and order.[9]

## II.

On appeal, Condemnee first claims that the trial court erred in finding that the taking was not excessive or an abuse of discretion.[10] She claims that the

_____

> that would suggest he has any connection to the [Authority] that would allow him to provide credible information as to "why the [Authority] proposed to move the access road onto [Condemnee's] property"; indeed, multiple [Authority] witnesses who <u>would</u> have a basis to testify about the reasons for the [Authority's] actions are identified on both [the Condemnee's] and the [Authority's] witness lists.

RR at 306a-07a (emphasis in original).

[9] "Our review of a trial court's decision to sustain or overrule preliminary objections to a declaration of taking in an eminent domain case is limited to determining whether the trial court abused its discretion or committed an error of law." *Beaver Falls Municipal Authority ex rel. Penndale Water Line Extension v. Beaver Falls Municipal Authority*, 960 A.2d 933, 936 (Pa. Cmwlth. 2008) (*Beaver Falls Municipal Authority*).

[10] As this Court has explained:

> The burden of establishing fraud, collusion, arbitrariness, bad faith, or an abuse of power or discretion rests with the condemnee. A condemnee alleging fraud, collusion, bad faith, or an abuse of power or discretion has a "heavy" burden and must overcome the

**(Footnote continued on next page…)**

8

Authority abused its discretion because it did not adequately prepare for the taking by failing to procure the necessary permits, approvals, or studies before filing the Declaration of Taking.  She asserts that the Authority also abused its discretion by acquiescing to the demands of a single landowner, DeBotton, in changing the location of the access road for future development of his property.  In addition, Condemnee contends that she would have been able to prove this claim if the trial court had not granted the Authority's Motion *in Limine* with respect to this testimony.  Relatedly, Condemnee claims that the taking was excessive because the Authority already possessed the property necessary to construct the access road as originally planned on DeBotton's property.

However, in rejecting Condemnee's former assertion, the trial court stated:

> []Condemnee's suggestion that the [Authority] did not prepare for the takings in connection with the Project, including but not limited to the taking of [Condemnee's p]roperty, borders on the absurd.  The evidence at the December 6 Hearing includes abundant proof of not only the planning process for the Project, but also the extensive, multi-year long efforts the [Authority] undertook to implement the Project, both generally and with respect to [Condemnee's p]roperty.  These efforts included negotiations with the Condemnee and her representatives, who were aware of both the Project and the request by the [Authority] that the Project could impact and/or involve

---

presumption that the condemnor has acted properly.  Our authority to review the exercise of the power of eminent domain is limited and is governed by juridical respect for the doctrine of the separation of powers of government.

*In re Condemnation of Real Estate by the Borough of Ashland*, 851 A.2d 992, 996 (Pa. Cmwlth. 2004) (*Ashland*) (citations omitted).  "[O]n judicial review, courts, absent proof of fraud, collusion, bad faith, or abuse of power, do not inquire into the [w]isdom [] of municipal actions and [j]udicial discretion should not be substituted for [a]dministrative discretion." *Id.* at 997 (citation omitted).

the use of Condemnee's property. The extensive preparation undertaken by the [Authority] in this case, also renders inapposite those cases in which courts found an abuse of discretion where the condemnor "moved precipitously and without adequate preparation."

RR at 939a-40a (citations omitted).

With respect to Condemnee's latter assertion, the trial court explained:

[]Condemnee also argues that the taking of [her p]roperty is excessive because it was not required, since the [Authority] had an alternative plan to implement the Project that it chose not to explore--using the original plan to route the access road to the pump station on the neighboring property owned by Newtown Village. In support of this argument, Condemnee ascribes bad faith to the [Authority] and suggests that the [Authority] colluded with the owner of the Newtown Village Property[, DeBotton,] and relocated the access road to appease his wishes to the detriment of Condemnee. In Ashland, the Court rejected a similar argument based on similar allegations. See [id.] at 997 (where condemnor knew that condemnees planned to build on the property, there were other options for the condemnor other than the taking of condemnees' property, condemnees' attitude toward condemn[or] "soured" prior to the condemnation, and the parties failed to communicate prior to the condemnation, this did not rise to the level of proof of fraud, collusion, bad faith, or abuse of discretion needed to overcome the presumption that condemnor acted properly).

RR at 940a.

The trial court properly distinguished *In re Estate of Rochez*, 558 A.2d 605 (Pa. Cmwlth. 1989), and *Beaver Falls Municipal Authority*, as cited by Condemnee, because in both of those cases the condemnors took a greater estate in the condemnees' property, *i.e.*, a fee simple rather than an easement, than was necessary for the projects involved therein. The trial court observed:

10

[N]one of the cases cited by [] Condemnee--and none that has come to the [c]ourt's attention otherwise--supports the conclusion that, just because the [Authority] had authority to proceed against another set of property owners' properties, the [Authority] could not instead acquire rights with respect to [Condemnee's p]roperty to implement the Project differently. Cf. Pidstawski v. South Whitehall [Township], 641 A.2d 25 (Pa. [Cmwlth.] 1994) (rejecting argument that, because of the availability of other park and recreational facilities in the township, the taking at issue was unnecessary and therefore excessive and an abuse of discretion); see also In re Appeal of Waite, 641 A.2d 25 (Pa. [Cmwlth.] 1994) (evidence that authority had options other than those taken vis-à-vis a portion of condemnee's property did not overcome presumption that the authority's actions were reasonable). Where, as in the case before this [c]ourt, the record demonstrates' that the condemnor's actions were not arbitrary, there is no basis to conclude that the condemnor committed an abuse of discretion. See Pidstawski, 380 at 1324-25; accord Appeal of Waite, 641 A.2d at 29.

RR at 942a (emphasis in original).

Finally, the trial court also properly distinguished Condemnee's reliance on *Redevelopment Authority of the City of Erie v. Owners or Parties in Interest*, 274 A.2d 244 (Pa. Cmwlth. 1971) (*City of Erie*), because that case involved the taking of private property that was then transferred to a neighbor for that neighbor's private use. *See id.* at 251 ("[P]roperty cannot be taken by government without the owner's consent for the mere purpose of devoting it to the private use of another.") (citation omitted). The trial court stated:

[A]s noted above, Condemnee takes no issue with the Project itself (which requires the [Authority] to acquire real property for the implementation thereof) or the fact that the Project is intended to benefit the public. Put differently, there is no objection that says it was an abuse of discretion by the [Authority] to proceed with implementation of the Project as it did--by authority to

11

acquire affected real property. The objection is only that the Condemnee prefers that the [Authority] should take someone _else's_ property to effectuate the public purpose of bringing public sewer to the affected communities in [the] Township. There is nothing in the law that supports an entitlement to such a preference, nor is there anything in the record from the December 6 [h]earing that demonstrates that the [Authority] abused its discretion by filing a declaration of taking with respect to Condemnee's property and not another property.

RR at 943a (emphasis in original). _Compare In Re: Condemnation of 110 Washington Street, Borough of Conshohocken_, 767 A.2d 1154, 1160 (Pa. Cmwlth. 2001) (holding that a redeveloper's surety agreement with a county redevelopment authority was an improper delegation of authority to redeveloper, where the surety agreement also required the redeveloper's prior written consent before the authority could exercise its eminent domain powers).

**III.**

Condemnee next claims that the Authority's Declaration of Taking was untimely. As noted above, Section 302(e) of the Code provides that "[t]he condemnor shall file within one year of the action authorizing the declaration of taking a declaration of taking covering all properties included in the authorization." 26 Pa. C.S. §302(e). Condemnee contends that the 2018 Resolution authorizing the taking of property for the Project did not include the easement over her property, and that authorization expired in 2019. Rather than starting the condemnation process anew, Condemnee asserts that the Authority attempted to skirt the statutory scheme by passing the single-page 2020 Resolution citing the 2018 Resolution as its authority to condemn her property.

12

However, the trial court properly determined that while the 2020 Resolution expressly incorporated by reference the 2018 Resolution, the 2020 Resolution is, by definition, its own resolution sufficient to authorize the taking of Condemnee's property for the Project under Section 302(e) of the Code. As the trial court explained:

> Neither the [Code] nor any case law cited by [] Condemnee stands for the proposition that a new authorization for a taking covering a new property is untimely because the new property was not included in a previous authorization. Condemnee misreads both the Code and the scant case law interpreting Section 302(e) in objecting to the "tacking on" of her property to what [the 2018 Resolution] authorized. Under the language of Section 302(e), the [Authority] had one year to file its declaration of taking covering those properties identified in [the 2018 Resolution]. Had [Condemnee's p]roperty been identified in [the 2018 Resolution], and thereafter the [Authority] failed to take action within the year and attempted to "revive or extend the expired authorization," then it might have run afoul of the statutory requirement. See In re Condemnation of Right-of-Way for State Route 0095, Section BSR ("State Route 0095"), 131 A.3d 625[, 635] (Pa. [Cmwlth.] 2015) ("failure to file a declaration of taking within the one-year time period results in the original declaration lapsing as to any properties for which the condemnor has not yet filed a declaration of taking"). Neither of the two cases cited by [] Condemnee on this point--In re Redevelopment Auth[ority] of City of Allentown ("Ribbon Works"), 31 A.3d 321 (Pa. [Cmwlth.] 2011) (which was expressly overruled by State Route 0095, see 131 A.3d at 635), and/or the State Route 0095 case itself--requires the result [] Condemnee urges here. In both cases, the property of the condemnee challenging the timeliness of the taking was identified in the original authorization for the taking, and the condemnor failed to act on the authorization with respect to such property within the one-year time period. That is simply not the case here. Indeed, as the Court expressly stated in State

13

Route 0095, "[n]othing in the [Code] prohibits [the condemnor] from starting the condemnation process over by . . . authorizing a revised plan or the original plan again. Once a revised plan is authorized or an old plan reauthorized, the process starts anew. [Id.] at 636. This is exactly what the [Authority] did in this case. [The 2020 Resolution] was the process "start[ing] anew" with respect to [Condemnee's p]roperty. The clock for the [Authority's] filing of the Declaration of Taking with respect to [Condemnee's p]roperty started ticking on September 8, 2020. The Declaration of Taking was timely.

RR at 937a-38a (emphasis in original). *See also State Route 0095*, 131 A.3d at 635 ("Once a revised plan is authorized or an old plan reauthorized, the process starts anew. To the extent that our decision in *Ribbon Works* may be interpreted as holding that the failure of a condemnor to file a declaration of taking within one year of an action authorizing the taking bars the condemnor from condemning the property in the future, it is expressly overruled.").

**IV.**

Condemnee next argues that the Declaration of Taking insufficiently describes that nature of the property interest that the Authority has condemned. Specifically, Condemnee claims that the Authority has condemned a permanent easement and "all ownership and other legal and equitable interests of the [e]asement on [Condemnee's p]roperty . . . to the extent required to allow [the Authority] to have title to and use of the defined permanent [e]asement aforementioned." RR at 10a. Condemnee contends that "[t]his vague language does not give [her] appropriate notice of the extent and effect of the taking, because it does not specify what title interest [the Authority] seeks to acquire." Appellant's Brief at 39. That is, "[the Authority] does not limit [its] right to the easement itself but potentially gives the Authority rights over the entire property to the extent necessary to serve

14

the easement." *Id.* Thus, she is subjected "to possible unanticipated consequences in the future and [it] prevents [her] from securing adequate compensation for the property interests actually acquired in the Declaration of Taking, which makes the Declaration of Taking wholly invalid." *Id.* at 39-40. In support, Condemnee relies on this Court's opinion in *Szabo v. Commonwealth*, 202 A.3d 52 (Pa. 2019).

However, the trial court properly distinguished *Szabo*, stating:

> In our case, there is no suggestion that the property to be taken has an incomplete description as in Szabo, or that some of the property to be taken is not known by the Condemnee to belong to her, and that therefore she lacks the opportunity to protect her interests and secure just compensation. Indeed, the facts in our case show exactly the opposite. Instead, this case is similar to Milford [Traumbauersville Area Sewer Authority v. Approximately 0.753 Acres of Land, 358 A.2d 450, 454 (Pa. Cmwlth. 1976)] (affirming lower court finding that a plan, attached to the declaration of taking, prepared by a consulting engineer, and taken from the deed book and tax parcel recordings, was sufficient to give condemnee requisite notice of that portion of his tract to be taken). In our case as in Milford, the Declaration of Taking included maps and/or plans prepared by an engineer and taken from both deed book and tax parcel identifications, and included a word/narrative-based legal description of the easement area. Very specifically, the condemned easement described in the Declaration of Taking and the exhibits thereto is sufficiently described by a metes and bounds description and plans showing the width and length of the condemned easement. This is "sufficient for identification." The Declaration of Taking also specifically sets forth the nature of the interest being condemned--a permanent easement. The Declaration of Taking therefore fully informs the Condemnee of the extent and effect of the taking, as well as the title and extent of the condemned interest.

RR at 945a-46a.

15

**V.**

Condemnee next argues that the Authority could not have considered the total compensation owed to her when it posted its general bond for the entire Project based on the properties to be condemned in the 2018 Resolution. Accordingly, she alleges that the bond is insufficient under Section 303(c) of the Code, requiring the Authority to post a bond relative to the taking of her property as well. Because the Authority does not have taxing authority, it posted an open-ended bond without surety, which requires it to provide an adequate plan to provide just compensation. It could not have known what just compensation was due when Condemnee's property was not a part of the taking at that time. *See* Appellant's Brief at 40-41.

However, the trial court properly rejected this claim, stating:

> At the December 6 [h]earing, the [Authority]--like the Redevelopment Authority in [In re Taking in Eminent Domain of Certain Parcels of Real Estate Located in the Northside Urban Renewal Area #1, Project Panna. R-389, 349 A.2d 781 (Pa. Cmwlth. 1976)]--presented sufficient credible testimony from its Chairman, as well as documentary proof ([Authority] financial statements for 2019 and 2020) demonstrating sufficient cash and cash equivalents and revenue-generating activities enabling the [Authority] to satisfy an award of estimated just compensation to [] Condemnee, as well as to satisfy any potential claims against the [Authority]. Put differently, and more accurately in light of the fact that the burden is on [] Condemnee to prove that the security provided for the condemnation is insufficient, there is insufficient proof--particularly in the fact of the affirmative proof presented by the [Authority]--that the security provided by the [Authority] is insufficient or that additional security must be posted to supplement the open-ended bond attached to the Declaration of Taking.

RR at 947a.  *See also, generally, In re: Condemnation by Newtown Township Delaware County, Municipal Authority* (Pa. Cmwlth., 752 C.D. 2022, filed September 1, 2022), slip op. at 3 ("After review of the parties' submissions and following a telephonic argument wherein each party had the opportunity to present its arguments, this Court finds that [Condemnee] has failed to establish the requirements for issuance of a stay.  Specifically, [Condemnee] relies, at least in part, on facts not found by the trial court, and has failed to make a strong showing that the trial court's findings are not supported by substantial evidence of record. Additionally, the court is not persuaded that the 200 homes and businesses that will be able to connect to public sewer upon completion of the access road will not be harmed by a delay in construction.").

## VI.

Finally, Condemnee claims that the trial court erred in its evidentiary rulings regarding DeBotton's testimony, and the documentary evidence, relating to the addition of her property to the taking in the 2020 Resolution.  Specifically, she contends that the trial court erred in holding that the Pennsylvania Rules of Civil Procedure regarding discovery generally do not apply to eminent domain proceedings, and that DeBotton's testimony and related documentary evidence were not relevant to the consideration of that issue.  Such evidence would clearly support her assertion that the Authority acted in bad faith by permitting DeBotton's interests control what property would be taken.

17

Although the Rules of Civil Procedure do not generally apply to eminent domain proceedings,[11] the rules relating to discovery do apply in an eminent domain matter, particularly with respect to proceedings before a Board of View. Indeed, the Comment to Rule 4001 states, in pertinent part:

> Before the amendment, Rule 4001(a) stated a scope which included "any civil action or proceeding at law or in equity brought in or appealed to any court which is subject to these rules." Taken literally, these words embrace every conceivable form of action. They are unchanged by these amendments. However the application of the Rules to eminent domain and to divorce, custody and support proceedings was not uniform. The amendments clarify the application of the Rules to those proceedings.
>
> Viewers' proceedings to assess damages in eminent domain actions were historically brought in the Courts of Quarter Sessions, which were courts not originally subject to the Rules of Civil Procedure. Even after the enactment of the Eminent Domain Code of 1963, vesting jurisdiction over eminent domain proceedings in the unified Common Pleas Court, Sec[tion] 703(2) of the Eminent Domain Code provided only for limited discovery of experts' valuation reports on appeal to the Common Pleas, provided they had not already testified before the viewers. The Code made no provision whatsoever for discovery for use in the initial proceedings before viewers. The viewers' proceedings were the discovery proceedings. This often left litigants at a disadvantage before the viewers, in some cases leading to needless appeals.
>
> The amendment to Rule 4001(a) makes clear that the entire chapter of deposition and discovery proceedings applies at all stages of an eminent domain action.

---

[11] *See, e.g.*, *In re Condemnation by City of Coatesville*, 898 A.2d 1186, 1189 n.7 (Pa. Cmwlth. 2006) ("Not only are the Rules of Civil Procedure not applicable to eminent domain proceedings, but preliminary objections filed pursuant to Section 406 of the [Code] serve a very different purpose than those filed under the Rules of Civil Procedure.") (citations omitted).

18

Pa.R.Civ.P. 4001 cmt. *See also* Pa.R.Civ.P. 4001(a) ("The rules of this chapter apply to any civil action or proceeding brought in or appealed to any court which is subject to these rules including any action pursuant to the Eminent Domain Code of 1964. . . ."); Pa.R.Civ.P. 4001(b) (defining the term "trial" as "includ[ing] a hearing before . . . viewers").

Nevertheless, it is not necessary to outline the exact contours of Rule 4001's application herein. As the Supreme Court has explained: "[W]e are guided by the principle that '[t]he admission or exclusion of evidence is within the sound discretion of the trial court[.]' *Lehigh–Northampton Airport Authority v. Fuller*, 862 A.2d 159, 168 (Pa. Cmwlth. 2004) (citations omitted)." *Lower Makefield Township v. Lands of Chester Dalgewicz*, 67 A.3d 772, 778 (Pa. 2013). As exhaustively outlined in the July 15, 2021 Order, the November 30, 2021 Order, and the December 3, 2021 Order, the trial court explained its rationale for its evidentiary rulings that do not demonstrate an abuse of its "sound discretion." *See* RR at 234a-40a, 302a-10a, 921a-24a. In short, the trial court's findings of fact are supported by substantial record evidence and Condemnee sought to introduce merely cumulative evidence of the Authority's intent because it was undisputed that the taking was amended to include Condemnee's property based on DeBotton's request for amendment.[12] As this Court has observed:

---

[12] As the trial court explained:

> It is undisputed that the reason for the [Authority's] evaluation of alternative access road locations was a request made in November 2018 from the owner of the Newtown Village Property, [DeBotton,] on which the pump station was located. It is also undisputed that even with the new proposal--to run the access road over a small portion of [Condemnee's p]roperty--the remaining part of the access road to the pump station will be on the neighboring

**(Footnote continued on next page…)**

19

A review of the record reveals that the Airport Authority was not precluded from admitting any relevant, competent evidence at trial. "The trial court may exclude evidence that is irrelevant, confusing, misleading, cumulative or prejudicial." *Concorde Investments, Inc. v. Gallagher*, [497 A.2d 637, 641 (Pa. Super.] 1985). The Airport Authority attempted to present specific testimony from various witnesses which was objected to by the Condemnees. We find nothing improper with these exclusions by the trial court.

*Lehigh–Northampton Airport Authority*, 862 A.2d at 168-69. *See also* Pa.R.E. 403 ("The court may exclude relevant evidence if its probative value is outweighed by a danger of . . . confusing the issues . . . or needlessly presenting cumulative evidence."). Thus, the trial court did not abuse its discretion in limiting the evidence that was presented at the hearing herein and Condemnee's claim to the contrary is without merit.

Accordingly, the trial court's order is affirmed.

_____
MICHAEL H. WOJCIK, Judge

Judge Fizzano Cannon did not participate in the decision of this case.

---

property as a result of a 1900-foot-long easement running along the entire righthand side of [Condmnee's p]roperty on the <u>neighboring</u> property.

RR at 934a (emphasis in original and citations omitted).

20

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In re: Condemnation by Newtown Township : 
Delaware County, Municipal Authority, of : 
a Permanent Easement Across the Property : 
located at 4700 W. Chester Pike, Newtown : 
Township, Delaware County, PA : 
 : No. 752 C.D. 2022
Folio Number: 30-00-02906-01 : 
Tax Map Number: 30-34-001-00 : 
 : 
Dorothy Rafferty, Condemnee : 
 : 
Newtown Township, Delaware County, : 
Municipal Authority, Condemnor : 
 : 
Appeal of: Dorothy Rafferty : 


# **O R D E R**


AND NOW, this 28th day of December, 2022, the order of the Delaware

County Court of Common Pleas in the above-captioned matter is AFFIRMED.


_____
MICHAEL H. WOJCIK, Judge